# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| RAYMOND CHAPPELL, | : | No. 3:09cv2239 |
| --- | --- | --- |
| Plaintifff | : | |
| v. | : | (Judge Munley) |
| | : | |
| STANLEY WYCHOCK and | : | |
| JACOB KALUZNY, | : | |
| Defendants | : | |

## MEMORANDUM

Before the court for disposition is the motion for summary judgment of Defendants Stanley Wychock and Jacob Kaluzny. The motion has been fully briefed and is ripe for disposition.

## BACKGROUND

On August 16, 2008, Plaintiff Raymond Chappell ("Chappell") was arrested and charged with possession with intent to deliver a controlled substance and possession of a controlled substance. (Compl. ¶ 9 (Doc. 1)). This section 1983 action relates to Chappell's claim that he was maliciously prosecuted without probable cause.

On Saturday August 16, 2008, Wilkes-Barre Police Officers Stanley Wychock ("Wychock") and Jacob Kaluzny ("Kaluzny") were on patrol in Wilkes-Barre, Pennsylvania. (Defs.' Statement of Undisputed Material Facts ("DSMF") ¶ 3 (Doc. 19)). They received a call of an armed robbery at Pizza Fellas in Wilkes-Barre. (Id. ¶ 4). Wychcok and Kaluzny responded to the call, and were subsequently directed to 525 South River Street upon information that the suspect vehicle was parked outside that address. (Id. ¶¶ 6-11).

Wychock and Kaluzny arrived at 525 South River Street and positioned themselves at the rear of the house. (Id. ¶ 12). Kaluzny was positioned behind a neighbor's shed while Wychock was behind a neighbor's tree. (Id. ¶¶ 14, 15). Wychock states that he observed a

second-floor window being opened at the rear of 525 South River Street. (Id. ¶ 17). According to Wychcok, the window appeared to crank open from the bottom and Wychock saw a black male wearing a white tank-top shirt unsuccessfully attempt to climb out. (Id. ¶¶ 21, 22, 26). Wychock then saw the same man throw a white plastic bag out the window into the neighbor's yard. (Id. ¶ 27). Wychcok informed Kaluzny of what he had seen and reported the same over the radio. (Id. ¶ 28).

Officers at the front of the 525 South River Street knocked on the door and detained the house's occupants, Chappell and his brother Edris Nathan Chappell ("Nathan"). (Edris Nathan Chappell Dep. ("Nathan Chappell Dep.") at 23-24 (Doc. 21-3)). Wychock and Kaluzny were advised by officers at the front of 525 South River Street that the house was clear. (DSMF ¶ 31). Wychock and Kaluzny then retrieved the white bag, inside of which was a brown bag containing packets of heroin. (Id. ¶¶ 32-36). The officers showed the contents to Sergeant William Harden. (Id. ¶ 37).

Wychock and Kaluzny went to the front of 525 South River Street, where Chappell and Nathan were detained. (Id. ¶ 38). Chappell was wearing a white tank top shirt. (Id. ¶ 23). Wychock identified Chappell as the man he had seen throw the white bag out the rear second-floor window. (Id. ¶ 39). Chappell and Nathan were taken into custody. (Id. ¶ 23).

On August 16, 2008– the day of the events in question– Officers Wychock and Kaluzny filed an affidavit of probable cause as part of a criminal complaint against Chappell, to which they swore the following day before a magisterial district judge. (Crim. Compl. / Aff. of Probable Cause (Doc. 21-2)). The affidavit largely restates the facts described above, with slight differences. For instance, the affidavit can be read to say that both

2

affiants, and not Wychock alone, witnessed Chappell throw the bag from the window. (Id.) The affidavit states that the white bag landed in the neighbor's yard south of 525 South River Street, and not the yard to the north. (Id.) The affidavit also states that the white plastic bag held a grey plastic bag, and not a brown bag, which contained seventeen taped paper packets of suspected heroin. (Id.) The affidavit states that Chappell was taken into custody, processed, and charged. (Id.)

Chappell and his brother Nathan have a different account of what happened that day. Chappell testified that he was watching television downstairs on the evening in question, having had no work that day. (Raymond Chappell Dep. at 27-29 (Doc. 19-2)). Nathan testified that he was upstairs changing out of his work clothes after a day of work. (Nathan Chappell Dep. at 16-19). There came a knock at the door and Nathan looked out the window to see about a dozen police officers outside with guns drawn. (Raymond Chappell Dep. at 31; Nathan Chappell Dep. at 19-21, 27). Nathan yelled downstairs to Chappell that police were outside, at which time Chappell opened the door for the officers. (Raymond Chappell Dep. at 32; Nathan Chappell Dep. at 21). Chappell was handcuffed and detained on his neighbor's porch. (Raymond Chappell Dep. at 36; Nathan Chappell Dep. at 23-24). Police called Nathan outside and detained him on the porch of their residence. (Raymond Chappell Dep. at 32, 36; Nathan Chappell Dep. at 30, 33).

The police questioned the brothers as to whether they owned the van parked in front of their residence. (Raymond Chappell Dep. at 33; Nathan Chappell Dep. at 61). Chappell and Nathan each denied knowing who owned the van. (Raymond Chappell Dep. at 33; Nathan Chappell Dep. at 61). Subsequently a man whom Chappell and Nathan surmised to be the robbery victim from Pizza Fellas was brought to the residence. (Raymond

3

Chappell Dep. at 38, 75; Nathan Chappell Dep. at 45-48). The victim indicated that neither Chappell nor Nathan were responsible for the robbery. (Raymond Chappell Dep. at 76).

Chappell testified that Officers Wychock and Kaluzny came from the rear of the house holding a white plastic bag. (Raymond Chappell Dep. at 40). There was a discussion among the officers and they asked Nathan who owned the bag. (Raymond Chappell Dep. at 41-42; Nathan Chappell Dep. at 67-68). Nathan denied owning, or having seen the bag. (Raymond Chappell Dep. at 43). Nathan indicates that one officer pointed him out as the man he had seen throw the bag from a second-floor window. (Nathan Chappell Dep. at 33-39, 68). Chappell and Nathan each testified that the rear second-floor window was screwed shut and could not be opened. (Raymond Chappell Dep. 55, 57 - 59; Nathan Chappell Dep. at 53-56).

Chappell and Nathan were transported to the police station. (Raymond Chappell Dep. at 44). Nathan was processed but released the same day, without being charged. (Raymond Chappell Dep. at 46; Nathan Chappell Dep. at 49-50, 66). Chappell was kept from Saturday until Tuesday when he posted bail. (Raymond Chappell Dep. at 48; Nathan Chappell Dep. at 52). Chappell indicates that he was arrested and charged with possession with intent to deliver a controlled substance (Heroin), 35 PA. STAT. § 780-113 (a)(30), and possession of a controlled substance (Heroin) 35 PA. STAT. § 780-113 (a)(16). (Compl. ¶ 9). Chappell was tried in county court.[1] (Nathan Chappell Dep. at 74-

---

[1] The parties have not described the trial or its outcome, but, given the elements of a claim for malicious prosecution and the fact that the defendants do not contest otherwise, the court assumes that Chappell was

4

75).

Chappell filed his complaint in this court on November 13, 2009. (Doc. 1). The complaint raises two claims against the defendants for malicious prosecution: first, a claim under section 1983 for violation of the Fourth and Fourteenth Amendments, and second, a claim under Pennsylvania common law. (Id.) The defendants answered the complaint on January 15, 2010. (Doc. 10). The parties engaged in discovery and the defendants filed the instant motion for summary judgment on July 20, 2010, bringing the case to its present posture. (Doc. 18).

**JURISDICTION**

The court has federal question jurisdiction over this civil rights action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief). The court has supplemental jurisdiction over plaintiff's common law malicious prosecution claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**LEGAL STANDARD**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

acquitted.

5

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

The defendants move for summary judgment on both of Chappell's claims for malicious prosecution. We will address their motion with respect to the section 1983 claim and the Pennsylvania common law claim, in

turn.[2]

**1. Claim Under Section 1983**

Chappell brings suit pursuant to section 1983. Section 1983 does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. United States v. Kneipp, 95 F.3d 1199, 1204 (3d Cir. 1996). In pertinent part, section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). The parties do not dispute whether the defendants acted under color of state law, only whether Chappell has made out a claim for malicious prosecution in violation of the Fourth

---

[2] The defendants argue that Chappell may not bring a claim for malicious prosecution under the Due Process Clause of the Fourteenth Amendment, citing Albright v. Oliver, 510 U.S. 266, 271 (1994). Chappell clarifies that he referenced the Fourteenth Amendment, not to raise a substantive due process claim, but to the extent that the Fourth Amendment is only applicable to the states through the due process clause of the Fourteenth Amendment, citing Mapp v. Ohio, 367 U.S. 643 (1961). Accordingly, the defendants' motion for summary judgment will be denied as moot.

7

Amendment.

### a. The Plaintiff's Malicious Prosecution Claim

Generally, a section 1983 malicious prosecution action requires that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Dibella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

The defendants argue that Chappell cannot satisfy the third element–that is, he cannot prove that his proceeding was initiated without probable cause. Chappell argues that there is a genuine issue of material fact as to whether the defendants initiated a proceeding without probable cause because, though Wychock swore to seeing Chappell throw drugs out a window, Chappell denies having thrown anything out the window and claims that the window could not physically have been opened.

"Probable cause is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) (citations omitted). "[T]he question of probable cause in a section 1983 damage suit is one for the jury." Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998) (citing Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir.1978)). "Summary judgment on [Chappell's] malicious prosecution claim therefore is only appropriate if taking all of [Chappell's] allegations as true and resolving all inferences in [his] favor, a reasonable jury could not find a lack of probable cause for [Chappell's] stop and arrest." Id.

8

Here, we have conflicting testimony regarding the day in question. Wychock and Kaluzny swore to witnessing Chappell throw a bag containing heroin from a second-story window. Chappell and Nate testified that this window was screwed shut. Taking the evidence in a light most favorable to Chappell, a reasonable jury could conclude that the window was actually screwed shut and that Wychock could not have seen Chappell throw drugs from the window, as Wychock swore in his affidavit of probable cause. Because there is a question of fact as to whether or not Chappell threw the bag of heroin from the window, and therefore as to whether Wychock could have seen that act, we will deny the defendants' motion for summary judgment based on probable cause. We note that there is no other evidence on the record, apart from Wychock's observation, linking Chappell to the drugs which were found. Accordingly, if the jury finds that the window could not have been opened and that Wychock did not observe Chappell throwing the drugs, the court could not determine that probable cause existed to arrest and prosecute Chappell.

### b. The Defendants' Qualified Immunity Defense

Qualified immunity protects public officials "'from undue interference with their duties and from potentially disabling threats of liability.'" Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (quoting Elder v. Holloway, 510 U.S. 510, 514 (1994)). The doctrine does not apply when state officials "violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. at 599-600 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)). Therefore, the court must examine: (1) whether the officials violated a constitutional right, and (2) whether that right was clearly established at the time. Id.; Saucier v. Katz, 533 U.S. 194, 201-02 (2001). See also Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (stating that a right is "clearly established" if "it would be

clear to a reasonable police officer that his conduct was unlawful in the situation confronted.").

The defendants argue that they are entitled to qualified immunity because they arrested Chappell upon probable cause, having allegedly seen him throw a bag of heroin from a window, and therefore did not violate Chappell's constitutional rights. Chappell disputes whether the defendants saw him throw anything from the window. He argues, then, that there is a question of material fact as to whether the defendants had probable cause to arrest him. If the defendants arrested him without probable cause, they violated his constitutional right to be free from unlawful seizure, and that this right was clearly established at the time of the arrest.

Because there is a question of fact as to whether or not Chappell threw the bag of heroin from the window, we will deny the defendants' motion for summary judgment based on qualified immunity. A reasonable jury could conclude that the window which Wychock alleges Chappell opened was actually screwed shut and that Wychock could not have seen Chappell throw drugs from the window, as Wychock swore in his affidavit of probable cause. If so, the defendants would not be entitled to qualified immunity. See Lippay v. Christos, 996 F.2d 1490, 1504 (3d Cir. 1993) (citing Malley v. Briggs, 475 U.S. 335, 345 (1986)) ("If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established. Thus, he is not entitled to qualified immunity."). Accordingly, summary judgment would be inappropriate.

**2. Claim Under Pennsylvania Law**

The defendants also seek summary judgment over Chappell's claim

for malicious prosecution brought under Pennsylvania law. The defendants base their motion on (1) Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") and (2) the merits of Chappell's claim. We will address each argument in reverse order.

### a. State Law Malicious Prosecution Claim

As above, with respect to Chappell's claim for malicious prosecution under section 1983 and the Fourth Amendment, the defendants argue that Chappell's state law claim for malicious prosecution fails because the defendants had probable cause. Under Pennsylvania law, "a plaintiff alleging malicious prosecution must prove that . . . (1) the defendant instituted proceedings against plaintiff (a) without probable cause and (b) with malice, and (2) the proceedings terminated in favor of the plaintiff." Gilbert v. Feld, 842 F. Supp. 803, 814 (E.D. Pa. 1993) (citing Kelley v. General Teamsters, Local Union 249, 544 A.2d 940, 941 (Pa. 1988)). Thus, "[i]n a malicious prosecution action, the plaintiff has the burden of proving lack of probable cause. Probable cause is defined as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." Cosmas v. Bloomingdales Bros., Inc., 482, 660 A.2d 83, 86 (Pa. Super. Ct. 1995) (internal quotations and citations omitted). "Whether a malicious prosecution defendant had probable cause to initiate the criminal prosecution out of which the malicious prosecution claim originated depends upon both: (1) whether the defendant honestly believed that the accused committed the crime for which the accused was prosecuted (the subjective component); and (2) whether the defendant reasonably believed that the accused was guilty of the crime charged (the objective component)." Gilbert, 842 F. Supp. at 815 (citing Neczypor v. Jacobs, 169 A.2d 528, 531 (Pa. 1961)).

11

For the reasons found above, with respect to Chappell's claim for malicious prosecution under section 1983 and the Fourth Amendment, we determine that there are genuine issues of material fact, which if found in Chappell's favor, would establish that the defendants did not arrest Chappell upon probable cause. Specifically, Chappell has presented a genuine issue of fact as to whether Wychock and Kaluzny "honestly believed that the accused committed the crime for which the accused was prosecuted." Id. Defendants' motion for summary judgment will be denied.

### b. PSTCA Defense

By statute, Pennsylvania grants immunity to local governmental units. 42 PA. CONN. STAT. ANN. § 8541 (2007) ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."); see also Id. § 8501 (defining a "local agency" as a "government unit other than the Commonwealth government"). Local government employees are entitled to the same immunity as their employing local agency. Id. at § 8545. This official immunity is not available, however, if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct. . . ." Id. at § 8550.

"[W]illful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." Evans v. Philadelphia Transp. Co., 212 A.2d 440, 443 (Pa. 1965); see also Bright v. Westmoreland County, 443 F.3d 276, 287 (3d Cir. 2006). "[T]he pursuit of unfounded criminal charges against an individual has long been recognized as 'willful misconduct' within the meaning of § 8550." Thompson v. Wagner, 631 F. Supp. 2d 664, 688 (W.D. Pa. 2008) (citing Overstreet v. Borough of Yeadon, 475 A.2d 803

(Pa. Super. Ct. 1984).

As stated throughout this opinion, taking the evidence in a light most favorable to Chappell, a reasonable jury could conclude that Wychock and Kaluzny swore out an affidavit of probable cause indicating personal observation and identification of Chappell throwing drugs from a window, when in fact the window was screwed shut and Chappell had never seen or possessed the drugs. If the jury found such facts, there would be no question but that Wychock and Kaluzny desired to bring about an unfounded prosecution of Chappell, which amounts to willful misconduct. Accordingly, by virtue of section 8550, the defendants would be ineligible for immunity.

**CONCLUSION**

For the reasons stated above, the motion for summary judgment of Defendants Stanley Wychock and Jacob Kaluzny will be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND CHAPPELL, : No. 3:09cv2239
    Plaintifff :
   v. : (Judge Munley)
 :
STANLEY WYCHOCK and :
JACOB KALUZNY, :
    Defendants :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this  3rd  day of February 2011, upon consideration of the motion for summary judgment of Defendants Stanley Wychock and Jacob Kaluzny (Doc. 18), it is HEREBY **ORDERED** that the motion is **DENIED**.

                                              **BY THE COURT:**

                                          s/ James M. Munley

                                          **JUDGE JAMES M. MUNLEY**
                                          **United States District Court**